IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 07-CV-02214-LTB-BNB

MOHAMED RASHED D. AL-OWHALI,

Plaintiff,

v.

ERIC HOLDER, in his official capacity as U.S. Attorney General,

HARLEY LAPPIN, in his official capacity as Director, Federal Bureau of Prisons,
BLAKES SMITH, in his official capacity as Warden, USP Florence ADMAX,
FEDERAL BUREAU OF INVESTIGATION,

Defendants.

# PROPOSED SECOND AMENDED COMPLAINT

Plaintiff Mohamed Rashed D. Al-Owhali, a federal inmate at the United States Penitentiary Administrative Maximum in Florence, Colorado (“ADX”), by and through his attorneys, submits his SECOND Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(A).

## JURISDICTION

1. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States.

2. This Court has authority to grant injunctive relief in this action pursuant to 5 U.S.C. § 702, and Rule 65 of the Federal Rules of Civil Procedure.

3. This Court has authority to grant mandamus relief pursuant to 28 U.S.C. § 1361, and Rule 81(b) of the Federal Rules of Civil Procedure.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Mr. Al-Owhali's claims occurred, and continues to occur, in this district.

PARTIES

5. Mr. Al-Owhali is an inmate in the custody of the Federal Bureau of Prisons ("BOP") and is presently confined at the United States Penitentiary Administrative Maximum in Florence, Colorado ("ADX").

6. Defendant Eric Holder is the U.S. Attorney General. Defendant Holder, as the chief executive officer of the U.S. Department of Justice ("DOJ"), exercises authority over all DOJ agents and employees, BOP facilities, and the inmates in the custody of the BOP.

7. Defendant Harley Lappin is the Director of the BOP. Defendant Lappin has decision-making authority over inmates in the custody of the BOP, BOP agents and employees, and BOP facilities, including the ADX.Defendant Harrell Watts is the Administrator of National Inmate Appeals for the BOP Central Office. Defendant Watts issues rulings on Central Office Administrative Remedy Appeals—the final appeal under the BOP's Administrative Remedy program.

8. Defendant Blakes Smith is the ADX interim Warden. Defendant Smith exercises responsibility over the administration, operation, maintenance, policies, procedures, and functions of the ADX.

9. Defendant Federal Bureau of Investigation ("FBI"), through its agents and employees, exercises significant authority over Mr. Al-Owhali's contact with the outside world.

10. Each defendant is sued in his or its official capacity.

## STATEMENT OF FACTS

11. Mr. Al-Owhali is serving a sentence of life plus 40 years following his conviction in the United States District Court for the Southern District of New York on charges related to the 1998 U.S. Embassy bombing in Nairobi, Kenya. After his conviction in 2001, Mr. Al-Owhali was transferred to the ADX, where he is housed in the Special Security Unit, commonly referred to as "H-Unit."

12. Mr. Al-Owhali was placed under Special Administrative Measures ("SAMs") on October 16, 1998, shortly after his arrest, and he has been continued on these measures up until now. Mr. Al-Owhali was not provided with the reasons for his initial placement on SAMs nor for its yearly continuations even after his arrival at ADX.

13. As of the filing of the Second Amended Complaint, neither Defendants nor their agents have informed Plaintiff of the basis for his yearly continuation on SAMs.

14. Plaintiff was never informed of the result of any investigation that might be the basis for his yearly continuation on SAMs.

15. On November 13, 2008, Mr. Al-Owhali's SAMs was extended for one year, which is the maximum term permitted under current BOP regulations.[1]

16. The SAMs are authorized by BOP regulations codified in the Code of Federal Regulations:

> "Upon direction of the Attorney General, the Director, Bureau of Prisons, may authorize the Warden to implement special administrative measures that are reasonably necessary to protect persons against the risk of death or serious bodily injury. These procedures may be implemented upon written notification to the Director, Bureau of Prisons, by the Attorney General . . . that there is a substantial risk that an inmate's communication or contacts with persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of death or serious bodily injury to persons."

28 C.F.R. § 501.3 (2007).

17. The trial court did not order that the SAMs remain in effect during Mr. Al-Owhali's sentence.

18. In this Second Amended Complaint, Mr. Al-Owhali raises sevens claims that relate to the SAMs and the conditions of his confinement.

*The SAMs*

19. Inmates on SAMs at the ADX, such as Mr. Al-Owhali, are housed in solitary confinement for approximately 23 hours per day under highly restrictive conditions characterized by social isolation and sensory deprivation. These inmates are precluded from communicating with other inmates and are highly restricted as to those in the outside world they are permitted to communicate with. The non-SAMs inmates at ADX who are housed in segregation cells are permitted to communicate with the outside world pursuant

[1] When the SAMs regulations were first promulgated by the BOP in 1997, the limitations on an inmate's privileges could be imposed for up to 120 days. See 28 C.F.R. § 501.3 (2001); 62 FR 33732 (June 20, 1997).

to BOP and ADX regulations unless restricted as part of the disciplinary process. Thus, the SAMs deprive Mr. Al-Owhali of a significant liberty interested compared to the stark ordinary incidents of ADX life and his First Amendment rights to communicate with outside people.

20. The inmates on SAMs, such as Plaintiff, are restricted as to what TV programs they may watch; are restricted in the publications, such as books and magazines, that they may receive; and they are restricted as to who they can write to and who can write to them.

21. Under BOP regulations, inmates are told that they have numerous "rights" and "responsibilities." See 28 C.F.R. § 541.12 (2007), "Inmate Rights and Responsibilities," attached hereto as Exh. 1. Non-SAMs inmates at the ADX have these "rights" and "responsibilities," despite the fact that they are housed in solitary confinement. Mr. Al-Owhali has been deprived of many of these rights by the terms and conditions of his SAMs even though he has not been classified to segregation for violation of any BOP's rules.

22. On information and belief, one of the purposes of the SAMs is to force the individual, such as Mr. Al-Owhali, to forego their personal religious belief if the SAMs restrictions are ever to be removed.

23. Mr. Al-Owhali's religious beliefs include group prayers. Due to his placement on SAMs, he is precluded from participating in group prayer.

24. The challenged conditions imposed by SAMs, as discussed below, are continuing in nature. Annually since 1998, some form of a SAMs has been renewed in relation to Mr. Al-Owhali. These annual reviews are not new hearings to determine whether a SAMs

should be imposed but are reviews to determine in what manner the SAMs should be continued. The actions of the Defendants in continuing Mr. Al-Owhali on SAMs are not discrete acts but are part of a continuing pattern of failure to recognize the existence of a liberty interest prior to imposing and continuing such draconian conditions upon Mr. Al-Owhali.

*The Right to Visit and Correspond with Family Members and Friends*

25. BOP regulations state that inmates have the right to "visit and correspond with family members and friends . . . in keeping with Bureau rules and institution guidelines." See Exh. 1. Pursuant to the SAMs, Mr. Al-Owhali is permitted to visit and correspond with no one other than his immediate family—narrowly defined as parents, siblings, and grandparents. Mr. Al-Owhali is not permitted to communicate with his young nieces and nephews, nor is he allowed to communicate with friends.

26. Prior to 2004, Mr. Al-Owhali was allowed to communicate through letters with his nephews and nieces and others as long as that person was not considered a media representative by the Defendants or their agents.

27. In 2004, the SAMs imposed a new set of restrictions on Mr. Al-Owhali's correspondence with his immediate family, despite Mr. Al-Owhali's compliance with the terms of his SAMs. The 2004 SAMs significantly increased the review and analysis periods for English and non-English mail—from 5 to 14 business days for English mail, and from 10 to 60 business days for non-English mail. The 14-business-day English and 60-business-day non-English review and analysis periods remain in effect under Mr. Al-Owhali's

current SAMs. The 2004 SAMs also took away his right to communicate through letters with his nephews and nieces, his extended family, and his friends.

28. Mr. Al-Owhali's relationship with his family has suffered great harm as a result of the prohibition against communicating with extended family members, especially his young nieces and nephews, and as a result of the excessive delays imposed on Mr. Al-Owhali's incoming and outgoing Arabic mail.

29. In 2004, new restrictions were also imposed on the volume and frequency of Mr. Al-Owhali's outgoing correspondence with his immediate family. Under Mr. Al-Owhali's current SAMs, his correspondence may be limited to three double-sided 8.5 x 11 in. sheets of paper, once per calendar week, to a single approved recipient.

30. On information and belief, the SAMs inmates, such as Mr. Al-Owhali, are each permitted to write one letter a week and that letter and its contents can be addressed only to one person, such as the father or mother but not both, or that letter will not be permitted to be sent. The non-SAMs inmates are not restricted when writing their letters to addressing each letter to only one person or it will not be sent. Thus, the SAMs deprive Mr. Al-Owhali of a significant First Amendment interest and violate the equal protection clause.

31. Mr. Al-Owhali's letters addressed to his father have been rejected when they contain discussions of political, historical, sociological and/or religious issues even though these letters do not incite violence. Neither Mr. Al-Ohwali nor his father are given an opportunity to challenge the denial of the exchange of these letters.

*The Right to a Wide Range of Reading Materials*

32. BOP regulations state that inmates have the right to "a wide range of reading materials for educational purposes and for [their] own enjoyment." See Exh. 1. The regulations further state that this includes "magazines and newspapers sent from the community, with certain restrictions." Id. What's more, BOP regulations permit inmates to receive subscriptions without obtaining prior approval, with limited exceptions in the case of publications containing nudity or sexually-explicit material. See 28 C.F.R. § 540.70 (2007).

33. Beginning as early as 1999, Mr. Al-Owhali was allowed to purchase publications in Arabic. In 1999, he purchased subscriptions to two Arabic newspapers: *Al-Quds Al-Arabi* and *Al-Hayat*. The subscriptions were purchased with the knowledge and approval of the F.B.I. and the Assistant U.S. Attorney for the Southern District of New York. The newspapers were delivered on time and intact. At no time did Mr. Al-Owhali violate BOP regulations with respect to these publications, nor did Mr. Al-Owhali use the publications for unlawful purposes.

34. Nevertheless, the SAMs imposed a new set of restrictions on Mr. Al-Owhali's access to newspapers, radio, and television in 2004 by restricting Mr. Al-Owhali's access to channels and stations which primarily broadcast news—and all newspapers with the exception of *USA Today*. Until June 2008, Mr. Al-Owhali was not allowed to receive the newspaper until the edition was at least 30 days old. He is still not allowed to receive the complete newspaper—whole sections are removed from each edition.

35. Mr. Owhali nor, on information and belief, the publishers of *Al-Quds Al-Arabi* and *Al-Hayat* received notice that he was not allowed to received publications in Arabic nor the

reasons Arabic publications were being banned, the reasons for such bannings, or an opportunity to challenge such bans. These actions by the Defendants violated the First Amendment and Due Process Clause.

36. Mr. Al-Owhali received notice in June 2008 that he would be permitted to subscribe to certain additional publications printed in English. On information and belief, should Mr. Al-Owhali actually be permitted to purchase a subscription to such publications, each issue will still be subject to censorship and delay at the discretion of the FBI. Based upon the prior actions of the Defendants and their agents, neither Mr. Al-Owhali nor the publisher will be provided notice that certain items in these publications are being censored, the reasons for that censorship, or the opportunity to challenge such censorship.

37. On information and belief, Mr. Al-Owhali has been restricted from receiving the book *Palestine: Peace Not Apartheid*, written by former President Jimmy Carter. The non-SAMS inmates have not been precluded from ordering this book. The Defendants or their agents have not provided notice to Mr. Al-Owhali or the publisher that President Carter's book was banned, the reasons for that ban or the opportunity to challenge such ban.

*The Right to Unrestricted and Confidential Access to the Courts*

38. BOP regulations state that inmates have the right to "unrestricted and confidential access to the courts by correspondence." See Exh. 2. Under the terms of Mr. Al-Owhali's SAMs, he has no confidential access to the courts—restricted or unrestricted. Any mail that is not "clearly and properly" addressed to or from Mr. Al-Owhali's pre-approved SAMs affirming attorney(s) is classified under the SAMs as non-legal mail. All of Mr.

Al-Owhali's non-legal mail must be copied and forwarded to a location "designated by the FBI," for government analysis and approval. As noted above, Mr. Al-Owhali's English non-legal mail is subject to at least a 14-business-day hold for such review and analysis.

39. BOP regulations state that there is a class of outgoing and incoming mail that may be treated as legal or "special" mail, e.g., mail to U.S. Attorney's Offices, members of Congress, the BOP, federal law enforcement agencies, and verified consular representatives. See 28 C.F.R. § 540.2 (2007). Properly marked incoming special mail is inspected only for the presence of contraband. See 28 C.F.R. § 540.18 (2007). Outgoing special mail may be sent sealed by the inmate and not read by staff. Id.

40. Under Mr. Al-Owhali's SAMs, there is only one category of legal/special mail—mail that is clearly and properly addressed to or from Mr. Al-Owhali's SAMs authorized attorneys. As a result, Mr. Al-Owhali's incoming and outgoing mail to U.S. Attorney's Offices, members of Congress, the BOP, federal law enforcement agencies, verified consular representatives, etc., is classified as non-legal mail that must be routed through defendant FBI for analysis and approval.

41. Defendants and their agents have readily accessible means in determining whether outgoing mail addressed to U.S. Attorney's Offices, members of Congress, the BOP, federal law enforcement agencies, and verified consular representatives is properly addressed to the true and correct address of the addressee. Once verified, such mail should be designated as legal/special mail and should not be routed through defendant FBI for analysis and approval.

*The Right to Legal Counsel from an Attorney of Choice*

42. BOP regulations state that federal inmates have the right to "legal counsel from an attorney of your choice by interviews and correspondence." See Exh. 2. Under the SAMs, Mr. Al-Owhali is not permitted to write to lawyers or law clinics to solicit legal counsel. He is restricted to legal counsel from pre-approved attorneys ("the inmate's attorney of record, who has been verified and documented by the USA/SDNY") who have already signed a SAMs affirmation document. In practice, Mr. Al-Owhali is not allowed to communicate with an attorney unless that attorney has been approved by the U.S. Attorney's Office for the Southern District of New York ("SDNY").

43. These restrictions preclude Mr. Al-Owhali from contacting an attorney and inquiring confidentially into whether that attorney would be interested in handling a criminal or civil legal matter on his behalf given that he might not want the government to become aware of this legal matter until it is actually filed. To request an attorney to agree to a SAMs agreement before the attorney can even read a letter, or talk to the SAMs inmate, in regards to what legal matter is involved imposes an unreasonable prior restraint by the government.

44. All attorneys are officers of the court and should be treated in such manner. The government may wish to enclose the unopened envelope containing Mr. Al-Owhali's letter in its own envelope with a letter explaining that this communication is from a SAMs designated inmate, further explaining it is requested that the attorney does not forward anything to another person or communicate messages to others. However, to ban

the initial consultation between the SAMs inmate and his possible future lawyer is unreasonable, creates prior restraints, and violates the First Amendment.

*Communication with the News Media*

45. BOP regulations also state inmates are permitted to correspond with members of the news media, as long as such communications are "in keeping with Bureau rules and institution guidelines." See 28 C.F.R. § 540.20 (2007). The SAMs prohibit Mr. Al-Owhali from communicating with the media—either directly or through his attorney. This is a blanket prohibition of all contact by any means.

46. The SAMs unreasonably restrict Mr. Al-Owhali from communicating with the media and commenting on matters of public interest. The courts have not held that inmates are precluded from providing comments on political and non-political issues. This restriction by the SAMs is unreasonable and overly broad in violation of the First Amendment.

*Notice of Disciplinary System and Sanctions*

47. BOP regulations state that inmates shall be given notice in writing, of the "disciplinary system within the institution and the time limits thereof," as well as the "[p]rohibited acts and disciplinary severity scale," and the applicable "[s]anctions by severity of prohibited act." See 28 C.F.R. § 541.11 (2007). Disciplinary sanctions include the loss of privileges such as commissary, movies, recreation, etc. Sanctions are imposed if an inmate is found to have committed a prohibited act by the Unit Discipline Committee ("UDC") or the Disciplinary Hearing Officer ("DHO"). The inmate must be given notice of the charge against him in the form of an Incident Report—and he or she receives the Incident Report when the investigation into the matter is initiated, unless there is "good cause for delivery

at a later date." See 28 C.F.R. § 541.14 (2007). The charge is read to the inmate, at which time he or she can make a statement concerning the incident unless it appears that "the incident may be the subject of a criminal prosecution." Id. The inmate is entitled to a hearing on the Incident Report, at which time the inmate make a statement and provide documentary evidence on his or her own behalf. The UDC "shall consider all evidence presented at the hearing and shall make a decision based on at least some facts, and if there is conflicting evidence, it must be based on the greater weight of the evidence." See 28 C.F.R. § 541.15 (2007).

48. The BOP's Administrative Remedy procedure does not afford Mr. Al-Owhali a meaningful review of his claims in connection with the SAMs. Harrell Watts, Administrator for the BOP Central Office's National Inmate Appeals, informed Mr. Al-Owhali on May 16, 2007, that:

> You may object to the provisions of the SAMs, but as the Warden appropriately advised you, the Bureau merely informs you of the requirements of the SAMs, and ensures the measures are followed. The continued need of the restriction is reviewed annually by the Attorney General (AG), and will remain in place until the AG determines they are no longer necessary.

See Exh. 3.

49. That being so, the BOP's Administrative Remedy Program does not offer Mr. Al-Owhali a meaning avenue towards a fair review of the conditions of his confinement with respect to the SAMs.

50. As demonstrated above, the restrictions imposed by the SAMs on Mr. Al-Owhali are decided and directed by the AUSA and FBI. The BOP has little, if no, say in what restrictions are imposed upon Mr. Al-Owhali.

51. The placement of Mr. Al-Owhali in long-term segregation has been delegated by Congress to the BOP and not to the FBI and/or the AUSA. However, in reality, the AUSA and FBI decide Mr. Al-Owhali's continued confinement in segregation without regards to the decision of the BOP.

*Lack of Meaningful Review*

52. The SAMs inmates, such as Mr. Al-Owhali, have no means to challenge their continuation on SAMs year after year.

53. The SAMs are continued at the discretion of AUSA. On information and belief, the BOP or its staff have a very limited say in regards to whether a SAM is continued. The BOP's responsibility is restricted to the implementation of the SAMs once continued.

54. The SAMs inmates, such as Mr. Al-Owhali, are not given meaningful notice of the reasons for the renewal of the SAMs nor are they afforded an opportunity to appear before the decision-makers, or a meaningful decision.

55. The continuation of Mr. Al-Owhali's SAMs was arbitrary and capricious and without penological justification.

56. The due process and liberty interests of SAMs inmates such as Mr. Al-Owhali are violated as discussed above.

*Mental Health Deterioration*

57. Mr. Al-Owhali has been confined in almost complete isolation from others, in thathis communication with other prisoners on his unit has been severely restricted since his confinement at ADX in 2001.

58. On information and belief, the staff working the housing units has been instructed by Defendants or their agents to minimize their conversation with inmates, such as Mr. Al-Owhali, who are on SAMs.

59. Mr. AL-Owhali has been on hunger strikes to protest the almost absolute isolation resulting from the SAMs. These hunger strikes are out of frustration since his SAMs is yearly continued, and he is not provided reasons for its continuation, the means to contest when it is being considered for continuation, or a meaningful hearing and an appeal process when it is continued.

60. These conditions of confinement are disproportionate to the security requirements of SAMs and are imposed to punish those placed on SAMs, such as Mr. Al-Owhali. The conditions of confinement imposed under SAMs are also done with the intended purpose to send a message to others who may commit criminal acts against the United States that the government will place you under conditions of confinement that will adversely affect your mental status.

61. While confined at ADX, Mr. Al-Owhali has been subject to indefinite solitary confinement and reduced environmental stimulation such that his mental health has deteriorated to such a level that these conditions of confinement violate the Eighth Amendment. The indefinite confinement in segregation has had a substantial negative impact on Mr. Al-Owhali's mental health.

62. The indefinite confinement in isolation of Mr. Al-Owhali at ADX has resulted in his being punished in violation of both his due process rights and the Eighth Amendment.

## CAUSES OF ACTION

FIRST CLAIM FOR RELIEF

Fifth Amendment to the U.S. Constitution

(Defendants Holder, Lappin, Smith, and Federal Bureau of Investigation)

63. Mr. Al-Owhali re-alleges and incorporates by reference paragraphs 1-62 herein.

64. Defendants' policies, practices, acts, and omissions in connection with the imposition, extension, and enforcement of the SAMs constitute an atypical and significant hardship on Mr. Al-Owhali in relation to the ordinary incidents of ADX life, deprive Mr. Al-Owhali of a significant liberty interest without affording Mr. Al-Owhali sufficiently adequate procedural protections, and deprive Mr. Al-Owhali of the equal protection of the law compared to non-SAMs inmates at the ADX.

65. As a proximate result of defendants' unconstitutional policies, practices, acts, and omissions, Mr. Al-Owhali has been, and continues to be, deprived of the procedural due process and equal protection rights guaranteed by the Fifth Amendment to the U.S. Constitution. Mr. Al-Owhali is suffering, and will continue to suffer, immediate and irreparable injury. Mr. Al-Owhali has no plain, adequate, or complete remedy at law to address the wrongs described herein. The equitable relief sought is necessary to prevent continued and further deprivations of Mr. Al-Owhali's rights under the Fifth Amendment.

SECOND CLAIM FOR RELIEF

Fifth Amendment to the U.S. Constitution

(Defendants Holder, Lappin, Smith, and Federal Bureau of Investigation)

66. Mr. Al-Owhali re-alleges and incorporates by reference paragraphs 1-65 herein.

67. Defendants' policies, practices, acts, and omissions in connection with the imposition, extension, and enforcement of the SAMs violate Mr. Al-Owhali's substantive due process rights guaranteed by the Fifth Amendment to the U.S. Constitution, because in addition to his being in the custody of the BOP, Mr. Al-Owhali is—in effect—in the custody of the FBI and the U.S. Attorney's Office for the SDNY. Mr. Al-Owhali can not appeal the continuation of the SAMs of the defendant FBI's agents and employees to higher FBI authority—and the BOP claims it lacks authority to review continuation decisions as to SAMs. The continuation decisions of the AUSAs in the SDNY are also insulated from review by the BOP. Under these circumstances, the BOP's Administrative Remedy program is rendered an empty formality. Mr. Al-Owhali can contest his SAMs through the Administrative Remedy Program each year for the rest of his life—and the BOP will continue to tell Mr. Al-Owhali the BOP is powerless to remove the SAMs and its only authority as to the SAMs is its implementation. These actions shock the conscience since the interest taken from Mr. Al-Owhali by Defendants' conduct curtail many of his basic constitutional rights.

68. As a proximate result of defendants' unconstitutional policies, practices, acts, and omissions, Mr. Al-Owhali has been, and continues to be, deprived of the substantive due process guaranteed by the Fifth Amendment to the U.S. Constitution because the BOP has maintained, in prior litigation over the SAMs, that it does not have such authority. Yousef v. Reno, 254 F.3d 1214, 1222 (10th Cir. 2001) ("[T]he Attorney General explains that the BOP is powerless to review the legality *and* fairness of the SAMs or the overall authority of the Department of Justice regulations." (emphasis in original)).

69. Mr. Al-Owhali is suffering, and will continue to suffer, immediate and irreparable injury. Mr. Al-Owhali has no plain, adequate, or complete remedy at law to address the wrongs described herein. The equitable relief sought is necessary to prevent continued and further deprivations of Mr. Al-Owhali's rights under the Fifth Amendment.

THIRD CLAIM FOR RELIEF

Eighth Amendment to the U.S. Constitution

(Defendants Holder, Lappin, Smith, and Federal Bureau of Investigation)

70. Mr. Al-Owhali re-alleges and incorporates by reference paragraphs 1-69 herein.

71. Defendants' policies, practices, acts, and omissions in connection with the continuing extension and enforcement of the SAMs have the effect of virtually burying Mr. Al-Owhali alive in solitary confinement at the ADX, in violation of contemporary standards of decency and the Eighth Amendment to the U.S. Constitution.

72. As a proximate result of defendants' unconstitutional policies, practices, acts, and omissions, Mr. Al-Owhali has been, and continues to be, deprived of the rights guaranteed by the Eighth Amendment to the U.S. Constitution. Mr. Al-Owhali is suffering, and will continue to suffer, immediate and irreparable injury. Mr. Al-Owhali has no plain, adequate, or complete remedy at law to address the wrongs described herein. The equitable relief sought is necessary to prevent continued and further deprivations of Mr. Al-Owhali's rights under the Eighth Amendment.

FOURTH CLAIM FOR RELIEF

First and Fifth Amendments to the U.S. Constitution

(Defendants Holder, Lappin, Smith, and Federal Bureau of Investigation)

73. Mr. Al-Owhali re-alleges and incorporates by reference paragraphs 1-72 herein.

74. Defendants' policies, practices, acts, and omissions in connection with the imposition, extension, and enforcement of the SAMs deprive Mr. Al-Owhali of freedom of speech, freedom of expression, freedom of association, and the right to receive information consistent with his status as an inmate, and deprive Mr. Al-Owhali of the equal protection of the law compared to fellow non-SAMs inmates at the ADX.

75. Defendants' policies, practices, acts, and omissions leave Mr. Al-Owhali without alternative means of exercising the full range of First Amendment rights consistent with his status as an inmate.

76. As a proximate result of defendants' unconstitutional policies, practices, acts, and omissions, Mr. Al-Owhali has been deprived of freedom of speech and association rights guaranteed by the First Amendment to the U.S. Constitution. Mr. Al-Owhali is suffering, and will continue to suffer, immediate and irreparable injury. Mr. Al-Owhali has no plain, adequate, or complete remedy at law to address the wrongs described herein. The equitable relief sought is necessary to prevent continued and further deprivations of Mr. Al-Owhali's rights under the First and Fifth Amendments to the United States Constitution.

## FIFTH CLAIM FOR RELIEF

### First and Sixth Amendments to the U.S. Constitution

### (Defendants Holder, Lappin, Smith, Federal Bureau of Investigation)

77. Mr. Al-Owhali re-alleges and incorporates by reference paragraphs 1-76 herein.

78. Defendants' policies, practices, acts, and omissions in connection with the imposition, extension, and enforcement of the SAMs eviscerate Mr. Al-Owhali's right to consult with and/or retain attorneys or law clinics by prohibiting Mr. Al-Owhali from communicating with attorneys who have not already signed a SAMs affirmation.

79. The SAMs prohibit Mr. Al-Owhali from contacting attorneys in regards to his criminal case to seek assistance without having that attorney agree to entry into a SAMs agreement. It further requires Mr. Al-Owhali to divulge to the government his intention and theories in contacting an attorney in regards to providing assistance in a criminal matter. On information and belief, many attorneys are likely to be scared off by the government requesting that they agree to the entry of a SAMs agreement before any contact can be had with

80. As a proximate result of defendants' unconstitutional policies, practices, acts, and omissions, Mr. Al-Owhali has been deprived of the rights of association and petition guaranteed by the First Amendment and the Sixth Amendment's guarantee of the right to communicate with counsel pertaining to criminal maters. Mr. Al-Owhali is suffering, and will continue to suffer, immediate and irreparable injury. Mr. Al-Owhali has no plain, adequate, or complete remedy at law to address the wrongs described herein. The equitable relief sought is necessary to prevent continued and further deprivations of Mr. Al-Owhali's rights under the First and Sixth Amendments to the U.S. Constitution.

## SIXTH CLAIM FOR RELIEF

### First, Fourth, and Fifth Amendments to the U.S. Constitution

(Defendants Holder, Lappin, Smith, and Federal Bureau of Investigation)

81. Mr. Al-Owhali re-alleges and incorporates by reference paragraphs 1-80 herein.

82. Defendants' policies, practices, acts, and omissions in connection with the imposition, extension, and enforcement of the SAMs deprive Mr. Al-Owhali of right to communicate confidentially with attorneys, the U.S. courts, federal judges, the U.S. Attorney's Office, members of the U.S. Congress, the BOP, federal law enforcement entities, and verified consular officials by classifying Mr. Al-Owhali's incoming and outgoing mail to these persons as non-legal mail that must be forwarded to the FBI for analysis and approval before delivery. This practice also deprives Mr. Al-Owhali of the equal protection of the law compared to fellow non-SAMs inmates at the ADX.

83. As a proximate result of defendants' unconstitutional policies, practices, acts, and omissions, Mr. Al-Owhali has been deprived of his First Amendment rights of association, petition, and free speech, his Fourth Amendment rights to be free from unreasonable search and seizure, and his Fifth Amendment right to the equal protection of the law.

84. Mr. Al-Owhali is suffering, and will continue to suffer, immediate and irreparable injury. Mr. Al-Owhali has no plain, adequate, or complete remedy at law to address the wrongs described herein. The equitable relief sought is necessary to prevent continued and further deprivations of Mr. Al-Owhali's rights under the First, Fourth, and Fifth Amendments to the U.S. Constitution.

## SEVENTH CLAIM FOR RELIEF

### Fifth and Eighth Amendments to the U.S. Constitution

(Defendants Holder, Lappin, Smith, and Federal Bureau of Investigation)

85. Mr. Al-Owhali re-alleges and incorporates by reference paragraphs 1-84 herein.

86. On information and belief, Defendants' policy and practices have imposed indefinite isolation on Mr. Al-Owhali, and subjected him to extreme sensory deprivation. Such conditions constitute cruel and unusual punishment.

87. The Defendants use of indefinite confinement in segregation of Mr. Al-Owhali is done to further punish him in violation of the Eight Amendment by subjecting him to a disproportionate punishment.

PRAYER FOR RELIEF

WHEREFORE, Mr. Al-Owhali respectfully requests that the Court:

a. Issue declaratory rulings that Mr. Al-Owhali's constitutional rights have been denied as described herein in Claims One, Two, Three, Four, Five, Six and Seven.

b. Permanently enjoin defendants, their subordinates, agents, employees, and all others acting in concert with them from subjecting Mr. Al-Owhali to the unconstitutional acts, omissions, policies, and conditions described herein in Claims One, Two, Three, Four, Five, Six and Seven.

c. Issue injunctive relief narrowly tailored to rectify the conditions and deprivations in Claims One, Two, Three, Four, Five, Six and Seven.

d. Grant Mr. Al-Owhali costs and attorney fees pursuant to Equal Access to Justice Act and other applicable law; and,

e. Grant such other and further relief as this Court deems just and proper.

DATED:

Attorneys for Plaintiff Mohamed Rashed D. Al-Owhali

*/s/ Daniel E. Manville*
DANIEL E. MANVILLE (Mich. Bar #P39731)
Daniel E. Manville, P.C.
P.O. Box 20321
Ferndale, Michigan 48220
Office: (248) 890-4720
Fax: (248) 556-5598
Email: daniel.manville@gmail.com

s/*Joyce Ellen Rosendahl*
Joyce Ellen Rosendahl
California State Bar #242807
Law Offices of Joyce Ellen Rosendahl
P.O. Box 15966
Newport Beach, CA 92659
Phone: 949-922-9462
Fax: 949-480-0062
Email: joycerosendahl@rosendahl-law.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this , I electronically filed the foregoing SECOND AMENDED COMPLAINT, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email address of Susan Prose, Assistant United States Attorney:

susan.prose@usdoj.gov

*/s/ Daniel E. Manville*
DANIEL E. MANVILLE (Mich. Bar #P39731)
Daniel E. Manville, P.C.
P.O. Box 20321
Ferndale, Michigan 48220