IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 07-cv-02214-LTB-BNB

MOHAMED RASHED D. AL-OWHALI,

Plaintiff,

v.

MICHAEL MUKASEY, in his official capacity as U.S. Attorney General,
HARLEY LAPPIN, in his official capacity as Director, Federal Bureau of Prisons,
HARRELL WATTS, in his official capacity as Administrator, National Inmate Appeals, Federal
Bureau of Prisons,
RONALD WILEY, in his official capacity as Warden, USP Florence ADMAX, and
FEDERAL BUREAU OF INVESTIGATION,

Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

This matter is before me on the **Defendants' Motion to Dismiss Second Amended
Complaint** [Doc. #51, filed 10/15/2009] (the "Motion"). I respectfully RECOMMEND that the
Motion be GRANTED IN PART and DENIED IN PART.

## I. STANDARD OF REVIEW

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P., the court must
accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences
in favor of the plaintiff. City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488,
493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976). The complaint must contain
specific allegations sufficient to establish that it plausibly supports a claim for relief. Alvarado
v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007). "The issue is not whether a
plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support

the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, I may treat the motion as seeking summary judgment under Rule 56, Fed. R. Civ. P., when matters outside the pleadings are presented to and not excluded by me and all parties have been given a reasonable opportunity to respond as provided in Rule 56. Fed.R.Civ.P. 12(d). The plaintiff has submitted with his response an unauthenticated letter addressed to his attorney (Ex. 4) and his mental health records under seal [Doc. #60], and the defendants have attached to their reply an unauthenticated memorandum (Ex. A-1). Because I do not refer to the exhibits in my analysis of the defendants' Motion, I need not convert the motion into one for summary judgment. Fed.R.Civ.P. 12(d).

The standard of review for a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is described as follows:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

> However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.

Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted).

## II. BACKGROUND

The plaintiff filed his initial Complaint on November 2, 2007, while proceeding *pro se* [Doc. #5]. The plaintiff, through counsel, filed a First Amended Complaint as a matter of course on June 30, 2008 [Doc. #25]. On September 14, 2009 [Doc. #44], the plaintiff was permitted to file a Second Amended Complaint [Doc. #41] (the "Complaint").[1] The Complaint contains the following allegations:

1. The plaintiff is currently incarcerated by the Federal Bureau of Prisons ("BOP") at the United States Penitentiary Administrative Maximum in Florence, Colorado ("ADX"). *Complaint*, opening paragraph and ¶¶ 5, 11. Inmates at ADX are housed in solitary confinement for approximately 23 hours per day. Id. at ¶ 17.

2. The plaintiff was convicted in the United States District Court for the Southern District of New York on charges related to the 1998 United States Embassy bombing in Nairobi, Kenya. He is serving a sentence of life plus 40 years. Id. at ¶ 11.

3. The plaintiff was placed under Special Administrative Measures ("SAMs") on October 16, 1998, and has been on the SAMs since then. He was not provided with the reasons

---

[1]The plaintiff was represented by counsel when filing Second Amended Complaint (and remains represented to date). Therefore, I do not liberally construe the Complaint. Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

for his initial placement on SAMs, nor was he provided with the reasons for its yearly continuations. Id. at ¶ 12.

4. After his conviction in 2001, the plaintiff was transferred to ADX where he is housed in the Special Security Unit, commonly referred to as the "H-Unit." Id. at ¶ 11.

5. The SAMs are authorized by BOP regulations which are codified in the Code of Federal Regulations:

> Upon direction of the Attorney General, the Director, Bureau of Prisons, may authorize the Warden to implement special administrative measures that are reasonably necessary to protect persons against the risk of death or serious bodily injury. These procedures may be implemented upon written notification to the Director, Bureau of Prisons, by the Attorney General . . . that there is a substantial risk that an inmate's communication or contacts with persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of death or serious bodily injury to persons.

28 C.F.R. § 501.3 (2007). Id. at ¶ 16.

6. The trial court did not order that the SAMs remain in effect during the plaintiff's sentence. Id. at ¶ 17.

7. Inmates on SAMs at the ADX are housed in solitary confinement for approximately 23 hours per day under highly restrictive conditions characterized by social isolation and sensory deprivation. These inmates are precluded from communicating with other inmates and are highly restricted as to those in the outside world with whom they are permitted to communicate. Inmates who are not under SAMs restrictions and who are housed in segregation cells are permitted to communicate with the outside world pursuant to BOP and ADX regulations unless restricted as part of the disciplinary process. Id. at ¶ 19.

8.  The inmates on SAMs are restricted as to what television programs they may watch; the publications such as books and magazines they may receive; and to whom they may write and from whom they can receive mail.  Id. at ¶ 20.

9.  Under BOP regulations, inmates are told that they have numerous "rights" and "responsibilities."  Non-SAMs inmates at the ADX have these "rights" and "responsibilities" despite the fact that they are housed in solitary confinement.  The plaintiff has been deprived of many of these rights by the terms and conditions of his SAMs.  Id. at ¶ 21.

10.  The plaintiff's religious beliefs include group prayers.  Due to his placement on SAMs, he is precluded from participating in group prayer.  Id. ¶ 23.

11.  BOP regulations state that inmates have the right to "visit and correspond with family members and friends . . . in keeping with Bureau rules and institution guidelines."  Under SAMs, the plaintiff is permitted to visit and correspond only with his parents, siblings, and grandparents.  He is not permitted to communicate with his nieces, nephews, and friends.  Id. at ¶ 25.

12.  Prior to 2004, the plaintiff was allowed to communicate through letters with his nieces and nephews and others so long as those persons were not considered by the defendants to be media representatives or their agents.  Id. at ¶ 26.  In 2004, the SAMs significantly increased the review and analysis periods for English mail from 5 to 14 business days and for non-English mail from 10 to 60 business days.  Id. at ¶ 27.  Also in 2004, the SAMs were altered so that the plaintiff's correspondence may be limited to three double-sided 8.5 x 11 inch sheets of paper, once per calendar week, to a single approved recipient.  Id. at ¶ 29.

13.  "On information and belief," SAMs inmates are permitted to write one letter per week.  That letter and its contents can be addressed only to one person, such as the father or

mother but not both, or that letter will not be sent.  This restriction is not imposed on the non-SAMs inmates.  Id. at ¶ 30.

14.  The plaintiff's letters to his father have been rejected when they contain discussions of political, historical, sociological, and/or religious issues even though the letters do not incite violence.  Neither the plaintiff nor his father are given an opportunity to challenge the rejection of the letters.  Id. at ¶ 31.

15.  BOP regulations state that inmates have the right to "a wide range of reading materials for educational purposes and for [their] own enjoyment" including "magazines and newspapers sent from the community, with certain restrictions."  BOP regulations also permit inmates to receive subscriptions without obtaining prior approval, with limited exceptions in the case of publications containing nudity or sexually-explicit material.  Id. at ¶ 32.

16.  In 1999, the plaintiff purchased subscriptions to two Arabic newspapers: *Al-Quds Al-Arabi* and *Al-Hayat*.  The subscriptions were purchased with the knowledge and approval of the FBI and the Assistant U.S. Attorney for the Southern District of New York.  The newspapers were delivered on time and intact.  The plaintiff did not violate BOP regulations with regard to the newspapers, nor did he use them for unlawful purposes.  Id. at ¶ 33.

17.  In 2004, the SAMs restricted the plaintiff's access to television channels and radio stations which primarily broadcast news and restricted newspapers with the exception of *USA Today*.  Until June 2008, the plaintiff was not allowed to receive the newspaper until it was at least 30 days old.  He is still not allowed to receive the complete newspaper; he currently receives the newspaper with whole sections removed from each edition.  Id. at ¶ 34.  "On information and belief," neither the plaintiff nor the publishers of *Al-Quds Al-Arabi* and *Al-*

*Hayat* received notice that the plaintiff was not allowed to receive publications in Arabic, the reasons the publications were banned, or an opportunity to challenge the bans. Id. at ¶ 35.

18.     The plaintiff received notice in June 2008 that he would be permitted to subscribe to certain additional publications printed in English, but he believes that the additional publications will be subject to censorship and delay at the discretion of the FBI. Id. at ¶ 36.

19.     "On information and belief," the plaintiff has been restricted from receiving the book *Palestine: Peace Not Apartheid* written by former President Jimmy Carter. The non-SAMs inmates have not been precluded from ordering this book. The defendants and their agents have not provided notice to the plaintiff or the publisher that the book was banned or the reasons for the ban, nor have they provided an opportunity to challenge the ban. Id. at ¶ 37.

20.     BOP regulations state that inmates have the right to unrestricted and confidential access to the courts by correspondence. Under the terms of the plaintiff's SAMs, he has no confidential access to the courts, restricted or unrestricted. The plaintiff's mail that is not "clearly and properly" addressed to or from his pre-approved SAMs attorney is classified under the SAMs as non-legal mail, is copied and forwarded for government analysis and approval, and is subject to the 14 business day hold for such analysis and approval. Id. at ¶ 38.

21.     BOP regulations state that there is a class of ingoing and outgoing mail that may be treated as legal or "special" mail. This includes mail to the U.S. Attorney's Offices, members of Congress, the BOP, federal law enforcement agencies, and verified consular representatives. Properly marked incoming special mail is inspected only for the presence of contraband. Outgoing special mail may be sent sealed by the inmate and not read by staff. Under SAMs, the plaintiff has only one category of legal/special mail: mail that is clearly and properly addressed to or from his SAMs-authorized attorney. His incoming and outgoing mail to the U.S.

Attorney's Offices, members of Congress, the BOP, federal law enforcement agencies, and verified consular representatives is classified as non-legal mail and must be routed through the FBI for analysis and approval.  Id. at ¶¶ 39-40.

22.  BOP regulations state that federal inmates have the right to legal counsel from an attorney of choice by interviews and correspondence.  Under the SAMs, the plaintiff is not permitted to write to lawyers or law clinics to solicit legal counsel.  He is restricted to legal counsel from pre-approved attorneys who have signed a SAMs affirmation document.  In practice, the plaintiff is not allowed to communicate with an attorney unless that attorney is approved by the United States Attorney's Office for the Southern District of New York.  Id. at ¶ 42.  This restriction prevents the plaintiff from confidentially contacting an attorney to inquire whether the attorney would be interested handling a criminal or civil matter.  Id. at ¶ 43.

23.  BOP regulations permit inmates to correspond with members of the news media so long as such communications are "in keeping with Bureau rules and institution guidelines."  The SAMs prohibit the plaintiff from communicating with the media either directly or through his attorney.  Id. at ¶ 45.  This restriction prohibits the plaintiff from communicating with the media and commenting on matters of public interest.  Id. at ¶ 46.

24.  BOP regulations state that inmates shall be given notice in writing of the "disciplinary system within the institution and the time limits thereof," as well as the "[p]rohibited acts and disciplinary severity scale," and the applicable "[s]anctions by severity of prohibited act."  An inmate must be given notice of a charge against him, and he is entitled to a hearing on the matter.  Sanctions are imposed if the Unit Discipline Committee or a Disciplinary Hearing Officer finds that an inmate committed a prohibited act.  Disciplinary sanctions include the loss of privileges such as commissary, movies, and recreation.  Id. at ¶ 47.

25. The United States Attorney and the FBI decide the plaintiff's continued confinement in segregation without regard to the decisions of the BOP. Id. at ¶ 51. On May 16, 2007, Harrell Watts, Administrator for the BOP Central Office's National Inmate Appeals, informed the plaintiff of the following:

> You may object to the provisions of the SAMs, but as the Warden appropriately advised you, the Bureau merely informs you of the requirements of the SAMs and ensures the measures are followed. The continued need of the restriction is reviewed annually by the Attorney General (AG), and will remain in place until the AG determines they are no longer necessary.

The BOP has little, if any, say about the restrictions that are imposed upon the plaintiff. As a result, the BOP's Administrative Remedy Program does not offer the plaintiff a meaningful review of the conditions of his confinement with regard to the SAMs, and the plaintiff does not have any means to challenge the continuation of his SAMs. Id. at ¶¶ 48-54.

26. The plaintiff's communication with other prisoners on his unit has been severely restricted since his confinement at ADX in 2001. Id. at ¶ 57. "On information and belief," prison staff has been instructed by the defendants or their agents to minimize their conversations with SAMs inmates. Id. at ¶ 58.

27. The plaintiff has conducted hunger strikes to protest the "almost absolute isolation" resulting from his SAMs. The hunger strikes are also conducted out of frustration because his SAMS are continued yearly and he is not provided the reasons for the continuation, the means to contest the continuation, or a meaningful hearing and appeal process when they are continued. id. at ¶ 59. The plaintiff's mental health has deteriorated due to his indefinite solitary confinement and reduced environmental stimulation. Id. at ¶ 61.

28. The conditions of confinement imposed under SAMs are disproportionate to the security requirements of SAMs and are imposed to punish those placed on SAMs. Id. at ¶ 60.

The Complaint asserts seven claims for relief. Claim One alleges that the "[d]efendants' policies, practices, acts, and omissions in connection with the imposition, extension, and enforcement of the SAMs" deprives the plaintiff of his procedural due process and equal protection rights. Id. at ¶¶ 64-65.

Claim Two alleges that the "[d]efendants' policies, practices, acts, and omissions in connection with the imposition, extension, and enforcement of the SAMs" violates the plaintiff's substantive due process rights. Id. at ¶ 67.

Claim Three alleges that the "[d]efendants' policies, practices, acts, and omissions in connection with the continuing extension and enforcement of the SAMs have the effect of virtually burying Mr. Al-Owhali alive in solitary confinement at the ADX" in violation of the plaintiff's Eighth Amendment rights. Id. at ¶ 71.

Claim Four alleges that the "[d]efendants' policies, practices, acts, and omissions in connection with the imposition, extension, and enforcement of the SAMs" deprives the plaintiff of his equal protection rights and deprives him of his "freedom of speech, freedom of expression, freedom of association, and the right to receive information consistent with his status as an inmate, and deprive Mr. Al-Owhali of the equal protection of the law compared to fellow non-SAMs inmates at the ADX." Id. at ¶ 74.

Claim Five alleges that the "[d]efendants' policies, practices, acts, and omissions in connection with the imposition, extension, and enforcement of the SAMs eviscerate Mr. Al-Owhali's right to consult with and/or retain attorneys or law clinics by prohibiting Mr. Al-Owhali from communicating with attorneys who have not already signed a SAMs affirmation" in violation of the plaintiff's First Amendment "rights of association and petition" and the Sixth Amendment right "to communicate with counsel pertaining to criminal matters." Id. at ¶¶ 78-80.

Claim Six alleges that "[d]efendants' policies, practices, acts, and omissions in connection with the imposition, extension, and enforcement of the SAMs" deprives the plaintiff of his equal protection rights and his constitutional rights to communicate confidentially with attorneys, federal courts and judges, the U.S. Attorney's Office, members of the U.S. Congress, the BOP, federal law enforcement entities, and verified consular officials "by classifying Mr. Al-Owhali's incoming and outgoing mail to these persons as non-legal mail that must be forwarded to the FBI for analysis and approval before delivery." Id. at ¶ 82. Specifically, the plaintiff has been deprived of his First Amendment rights of association, petition, and free speech; his Fourth Amendment rights to be free from unreasonable search and seizure; and his Fifth Amendment right to the equal protection of the law. Id. at ¶ 83.

Claim Seven alleges that the "[d]efendants' policies and practices have imposed indefinite isolation on Mr. Al-Owhali, and subjected him to extreme sensory deprivation" in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Id. at ¶¶ 86-87.

On March 3, 2010, the plaintiff's equal protection claims were dismissed without prejudice [Doc. #69]. The plaintiff sues the individual defendants in their official capacities. *Complaint*, caption. He seeks declaratory and injunctive relief. Id. at p. 22. He brings his claims pursuant to 28 U.S.C. § 1331; 5 U.S.C. § 702 and Rule 65, Fed.R.Civ.P.; and 28 U.S.C. § 1361 and Rule 81(b), Fed.R.Civ.P. Id. at pp. 1-2.

### III. ANALYSIS

#### A. Claim One

Claim One alleges that the "[d]efendants' policies, practices, acts, and omissions in connection with the imposition, extension, and enforcement of the SAMs" deprive the plaintiff of his procedural due process rights.  Id. at ¶¶ 64-65.  The defendants assert that Claim One is barred by the statute of limitation and, consequently, that the court lacks subject matter jurisdiction over the claim.

The parties agree that the action is subject to the six year statute of limitation in 28 U.S.C. § 2401(a).[2]  *Motion*, p. 7; *Plaintiff's Response to Defendants' Motion to Dismiss Second Amended Complaint* [Doc. #61] (the "Response"), pp. 6, 16.  The statute of limitation in section 2401(a) is jurisdictional and is not subject to waiver.  Ute Distribution Corp. v.  Secretary of Interior of U.S., 584 F.3d 1275, 1282 (10th Cir. 2009) (citing UIP v. United States of America, 99 F.3d 344, 347 (9th Cir. 1996)).  Therefore, the plaintiffs are asserting a factual challenge to the court's subject matter jurisdiction.  Under Holt, I do not presume the truthfulness of the Complaint's factual allegations, and I may consider affidavits and other documents to resolve disputed jurisdictional facts.  Holt, 46 F.3d at 1003.  In addition, determination of the limitation issue does not touch on the merits of the case.  Therefore, I analyze this issue under the standards

---

[2]The plaintiff cannot assert claims against the BOP, as a federal agency, or the defendants in their official capacities pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).  Farmer v. Perill, 275 F.3d 958, 963 (10th Cir.2001).  "Section 2401(a) is a catch-all provision; it establishes a general limitations period for civil lawsuits against the United States not otherwise covered by a more specific limitations period."  United States v. Rodriguez-Aguirre, 264 F.3d 1195, 1210 (10th Cir. 2001).  "[A]n equitable cause of action derived from the Constitution[] is not closely analogous to any statutory cause of action" and is, therefore, properly brought under section 2401(a).  Id. (internal quotations omitted).  Section 2401(a) provides "[e]xcept as provided by the Contract Disputes Act of 1978, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."

applicable to Rule12(b)(1) rather than the Rule 56 summary judgment standards. "The party invoking the jurisdiction of the court has the duty to establish that federal jurisdiction does exist." Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974).

The statute of limitations begins to run "when the plaintiff discovered or had reason to discover that he has suffered injury due to the defendant's actions." United States v. Rodriguez-Aguirre, 264 F.3d 1195, 1212 (10th Cir. 2001). "Indeed, the federal common law rule on when a statute of limitations begins to run is that it is when the plaintiff discovers, or by exercise of due diligence would have discovered, that he has been injured and who caused the injury." Id. (internal quotations and citations omitted).

Here, the plaintiff claims that he was denied procedural due process when the SAMs were first imposed and has been denied procedural due process every year thereafter upon renewal of the SAMs because he was not provided the reasons for the initial imposition of the SAMs or their continuation; the means to contest the continuation; or a meaningful hearing and appeal process when they are continued. The issue presented here is when did the plaintiff discover, or through the exercise of due diligence would have discovered, that he was not receiving the process he alleges is due.

In response to the defendants' limitations argument, the plaintiff states only that he "concedes he is time-barred from challenging the SAM designation imposed in 1998," but that the SAMs designation was renewed after the plaintiff's placement in ADX on November 15, 2002, and every year thereafter, and "he is not time-barred from challenging the renewal of each year since his confinement at ADX in 2001." *Response*, pp. 16-17. The plaintiff does not address the issue of accrual. Therefore, he has failed to meet his burden to establish that the court has subject matter jurisdiction over his claim.

Moreover, the Administrative Remedy Program has been designated as the avenue for inmates to challenge SAMs restriction since 1996. 28 C.F.R. §§ 501.3(e); 542.10-19. Had the plaintiff exercised due diligence by timely and properly challenging his initial SAMs and the continuation of his SAMs, he would have discovered that the Administrative Remedy Program did not provide him with the reasons for the initial imposition of the SAMs or their continuation; the means to contest the continuation; or a meaningful hearing and appeal process when they are continued. Instead, he waited almost 10 years to challenge the alleged lack of procedural protections.

The plaintiff attempts to classify each yearly renewal of SAMs as a separate and distinct event for purposes of calculating the limitations period. This approach ignores the required accrual analysis and the fact that the plaintiff was aware, or through due diligence would have been aware, of the factual predicate for his claim by 1998 or 1999 at the latest. See Wood v. Utah Bd. of Pardons & Parole, 2010 WL 1434400 at *2 (10th Cir. Apr. 12, 2010); Jones v. Henry, 260 Fed.Appx. 130, 131, 2008 WL 110988 at *1 (10th Cir. Jan. 10, 2008).

In Jones, the plaintiff was incarcerated after his conviction of first degree murder. The Oklahoma state legislature amended the statutory provisions governing parole to provide that individuals who had been convicted of a violent crime would be considered for parole every three years instead of every year. The plaintiff did not challenge the amendment until six years after the statute of limitation had run. The district court found that the action was barred by the statute of limitation because the plaintiff was aware of the factual predicate for his claim when he was not granted his first annual review. The Tenth Circuit Court of Appeals rejected the plaintiff's argument that each denial of parole consideration was a separate cause of action for purposes of the statute of limitation. The court affirmed dismissal of the action quoting "Brown

v. Ga. Bd. of Pardons & Paroles, 335 F.3d 1259, 1262 (11th Cir.2003) ('[S]uccessive denials of parole do not involve separate factual predicates and therefore do not warrant separate statute-of-limitations calculations.').”

 As with the plaintiff in Jones, the successive renewals of the plaintiff's SAMs--with only the Administrative Review Process available for challenging the SAMs--do not involve separate factual predicates. Accordingly, Claim One should be dismissed because it is barred by the statute of limitations, and the court does not have subject matter jurisdiction over it.

### B. Claim Two

Claim Two alleges that the "[d]efendants' policies, practices, acts, and omissions in connection with the imposition, extension, and enforcement of the SAMs" violates the plaintiff's substantive due process rights. *Complaint*, ¶ 67. Specifically, he claims his substantive due process rights are being violated because "he cannot appeal the continuation of the SAMs; the BOP claims it lacks authority to review the continuation decisions; and the BOP's Administrative Remedy program is rendered "an empty formality." Id. These allegations are redundant of the plaintiff's procedural due process claim.

The Supreme Court has "always been reluctant to expand the concept of substantive due process," and "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." County of Sacramento v. Lewis, 523 U.S. 833, 841 (1998) (internal quotations and citations omitted). Here, the procedural due process clause provides constitutional protection for the allegations in Claim Two. Because Claim Two is duplicative of Claim One, it should be

dismissed because it is barred by the statute of limitations and the court does not have subject matter jurisdiction over it.

### C. Claims Three and Seven

Claim Three alleges that the "[d]efendants' policies, practices, acts, and omissions in connection with the continuing extension and enforcement of the SAMs have the effect of virtually burying Mr. Al-Owhali alive in solitary confinement at the ADX" in violation of the plaintiff's Eighth Amendment rights. *Complaint*, ¶ 71. Claim Seven alleges that the "[d]efendants' policies and practices have imposed indefinite isolation on Mr. Al-Owhali, and subjected him to extreme sensory deprivation" in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Id. at ¶¶ 86-87.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment prohibition against cruel and unusual punishment requires prison officials to provide humane conditions of confinement by ensuring that inmates receive adequate food, clothing, shelter, and medical care. Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quotations and citations omitted).

A prisoner claiming an Eighth Amendment violation must establish both objectively and subjectively that particular conditions of confinement constitute cruel and unusual punishment. Wilson v. Seiter, 501 U.S. 294, 297-298 (1991). To satisfy the objective component, a plaintiff must allege a deprivation which objectively is "sufficiently serious" to form an Eighth Amendment violation. Id. at 298. To satisfy the subjective component, plaintiffs must demonstrate that the prison official was "deliberately indifferent" to a substantial risk of serious harm. Farmer, 511 U.S. at 834.

The plaintiff alleges that he is "housed in solitary confinement for approximately 23 hours per day"; "precluded from communicating with other inmates"; "restricted as to what TV programs [he] may watch"; restricted in the publications he may receive; and restricted as to whom he may write and from whom he can receive mail. *Complaint*, ¶¶ 19-20. He also alleges that "[o]n information and belief, the staff working the housing units has been instructed by Defendants or their agents to minimize their conversation" with SAMs inmates. Id. at ¶ 58.

The Eighth Amendment "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. 337, 349 (1981). "[I]t imposes a duty on prison officials to provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotations and citations omitted). "Only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

The plaintiff's allegations do not state a plausible claim under the Eighth Amendment. See Hill v. Pugh, 75 Fed. Appx. 715, 721, 2003 WL 22100960 (10th Cir. Sept. 11, 2003) (affirming dismissal of Eighth Amendment claim based on isolation and sensory deprivation because the complaint failed to allege an "unquestioned and serious deprivation of basic human needs" or "intolerable or shocking conditions"). See also Sattar v. Gonzales, No. 07-cv-02698-WDM-KLM, 2009 WL 606115 (D.Colo. March 6, 2009); Reid v. Wiley, No. 07-cv-01855-REB-KMT, 2008 WL 4406560, at *10 (D. Colo. Aug. 21, 2008) (recommending dismissal of Eighth Amendment claim); Reid v. Wiley, No. 07-cv-01855-REB-KMT, 2008 WL 4426083 (D. Colo. Aug. 21, 2008) (adopting recommendation regarding dismissal of Eighth Amendment claim).

The plaintiff does not allege that he has been deprived of adequate food, clothing, shelter, medical care, or safety measures. Nor does he allege that he is completely deprived of communications with others. To the contrary, he alleges that he is able to visit and correspond with his parents, siblings and grandparents. *Complaint*, ¶¶ 25, 29. Moreover, he does not allege that he is denied access to reading materials, radio, and television; he complains because he does not have unfettered access to them. Id. at ¶¶ 33, 34, 36, 37. Indeed, under his current SAMs, he has access to all television and radio stations that do not primarily broadcast news, and he has access to all books that do not facilitate criminal activity and do not present a substantial threat to the security of the nation and the prison. *Defendants' Reply in Support of Motion to Dimiss Second Amended Complaint* [Doc. #67], Ex. A-17, p. 15 (as assigned by the court's docketing system).[3] He is also out of his solitary confinement for approximately one hour per day. *Complaint*, ¶ 19.

The plaintiff alleges that the isolation imposed by the SAMs has had a "substantial negative impact" on his mental health and has caused him to protest through hunger strikes. *Complaint*, ¶¶ 59, 61. The plaintiff's *reactions to* his conditions of confinement, without more, cannot serve to measure of whether he has been deprived of the minimal civilized measure of

_____

[3]"[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." GFF Corp. v. Associated Wholesale Grocers, 130 F.3d 1381, 1384-1385 (10th Cir. 1997). The plaintiff's SAMs are referred to in his Complaint and are central to his claims, and he does not dispute the authenticity of the documents. Therefore, I may consider the documents as not "outside the pleading" for purposes of the Rule 12(b)(6) motion to dismiss.

life's necessities.[4]  <u>Magluta v. U.S. Federal Bureau of Prisons</u>, No. 08-cv-00404-CMA-MJW,

2009 WL 1504749, at *7 (D. Colo. May 28, 2009).

The Motion should be granted insofar as it seeks dismissal of Claims Three and Seven.

### D.  Claim Four

Claim Four alleges that  the "[d]efendants' policies, practices, acts, and omissions in

connection with the imposition, extension, and enforcement of the SAMs" deprives the plaintiff

of  his First Amendment rights to "freedom of speech, freedom of expression, freedom of

association, and the right to receive information consistent with his status as an inmate."  <u>Id.</u> at

¶¶ 74-76.

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his

status as a prisoner or with the legitimate penological objectives of the corrections system."  <u>Pell</u>

<u>v. Procunier</u>, 417 U.S. 817, 822 (1974).  Substantial deference is afforded "to the professional

judgment of prison administrators, who bear a significant responsibility for defining the

legitimate goals of a corrections system and for determining the most appropriate means to

accomplish them."  <u>Overton v. Bazzetta</u>, 539 U.S. 126, 132 (2003).

A challenged prison regulation is valid if it is reasonably related to legitimate penological

interests.  <u>Id.</u> at 131-32 (examining a prisoner's right to association); <u>Thornburgh v. Abbott</u>, 490

U.S. 401, 413 (1989) (addressing freedom of speech).  In determining whether a restriction is

"reasonably related to legitimate penological interests," the court is guided by the four factors

identified in <u>Turner v. Safley</u>, 482 U.S. 78, 89-91 (1987).  <u>Kay</u>, 500 F.3d at 1218-19.  The factors

are: (1) the existence of a rational connection between the restriction and a legitimate

---

[4]The plaintiff does not allege that the defendants have been deliberately indifferent to his
mental health needs.

penological interest advanced as its justification; (2) the presence of alternatives for the inmate to exercise the right; (3) the effect that elimination of the restriction would have on guards, other prisoners, and prison resources; and (4) the existence of alternatives for prison officials without restricting inmates' rights to religious expression.  <u>Boles v. Neet</u>, 486 F.3d 1177, 1181 (10th Cir. 2007).

This analysis requires facts that are not properly before the court on a motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P.  Accordingly, I recommend that the Motion be denied insofar as it seeks dismissal of the plaintiff's First Amendment claims.

### E.  Claim Five

Claim Five alleges that the "[d]efendants' policies, practices, acts, and omissions in connection with the imposition, extension, and enforcement of the SAMs eviscerate Mr. Al-Owhali's right to consult with and/or retain attorneys or law clinics by prohibiting Mr. Al-Owhali from communicating with attorneys who have not already signed a SAMs affirmation" in violation of the plaintiff's First Amendment "rights of association and petition" and the Sixth Amendment right "to communicate with counsel pertaining to criminal matters."  *Complaint*, ¶¶ 78-80.  In his Statement of Facts, the plaintiff alleges that the SAMs "restrictions preclude Mr. Al-Owhali from contacting an attorney and inquiring confidentially into whether that attorney would be interested in handling a criminal *or civil* legal matter on his behalf . . . ."  <u>Id.</u> at ¶ 43 (emphasis added).

As with Claim Four, the First Amendment claims are not appropriately addressed on a motion to dismiss.  The Motion should be denied insofar as it seeks dismissal of those claims.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI.

Therefore, to the extent the plaintiff is attempting to assert a Sixth Amendment claim based on his inability to communicate with counsel pertaining to a civil case, the claim must fail.

Moreover, the Complaint does not allege that the plaintiff has been denied the right to "consult with and/or retain" an attorney for his criminal defense or that the plaintiff has a need or will have a need to consult such attorney. The Complaint states only that "[o]n information and belief, many attorneys are likely to be scared off by the government requesting that they agree to the entry of a SAMs agreement before any contact can be had." *Complaint*, ¶ 79.

The plaintiff has not alleged any facts that, " if assumed to be true, [show that] the plaintiff plausibly (not just speculatively) has a claim for relief." Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008). "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief." Id. (internal quotations and citation omitted).

I recommend that the Motion be granted to the extent it seeks dismissal of Claim Five's allegations of a Sixth Amendment violation. I further recommend that the Motion be denied insofar as it seeks dismissal of Claim Five's allegations of a First Amendment violation.

### F. Claim Six

Claim Six alleges that "[d]efendants' policies, practices, acts, and omissions in connection with the imposition, extension, and enforcement of the SAMs" deprives the plaintiff of his constitutional right "to communicate confidentially with attorneys, federal courts and judges, the U.S. Attorney's Office, members of the U.S. Congress, the BOP, federal law enforcement entities, and verified consular officials by classifying Mr. Al-Owhali's incoming and outgoing mail to these persons as non-legal mail that must be forwarded to the FBI for analysis and approval before delivery." *Complaint*, ¶ 82. Specifically, the plaintiff has been

deprived of his First Amendment rights of association, petition, and free speech; and his Fourth

Amendment right to be free from unreasonable search and seizure.  <u>Id.</u> at ¶ 83.

As above, the plaintiff's First Amendment claims are not appropriately addressed on a

motion to dismiss.  The Motion should be denied insofar as it seeks dismissal of Claim Six's

allegations of First Amendment violations.

The Fourth Amendment prohibits unreasonable searches and seizures.  U.S. Const.

amend. IV.  The United States Supreme Court has stated:

> The test of reasonableness under the Fourth Amendment is not
> capable of precise definition or mechanical application. In each
> case it requires a balancing of the need for the particular search
> against the invasion of personal rights that the search entails.
> Courts must consider the scope of the particular intrusion, the
> manner in which it is conducted, the justification for initiating it,
> and the place in which it is conducted.

<u>Bell v. Wolfish</u>, 441 U.S. 520, 559 (1979).

"A right of privacy in traditional Fourth Amendment terms is fundamentally

incompatible with the close and continual surveillance of inmates and their cells required to

ensure institutional and internal order."  <u>Hudson v. Palmer</u>, 468 U.S. 517, 527-28 (1984).  In the

case of unprivileged incoming and outgoing prison mail, regulation by prison officials is

essentially an administrative matter in which the courts will not intervene.  <u>United States v.</u>

<u>Gordon</u>, 168 F.3d 1222, 1228 (10th Cir. 1999) (internal quotations and citation omitted).

In one paragraph, the defendants assert that the plaintiff's Fourth Amendment claim fails

because he does not have any reasonable expectation of privacy in mail that is not legally

privileged.  *Motion*, p. 37.  However, the defendants do not discuss whether any of the mail at

issue in this case is legally privileged, nor do they discuss reasonableness in the context of the

Fourth Amendment.  The Motion should be denied insofar as it seeks dismissal of Claim Six.

# IV.  CONCLUSION

I respectfully RECOMMEND that the Motion be GRANTED IN PART and DENIED IN PART as follows:

1.  GRANTED to the extent it seeks dismissal of Claims One and Two as barred by the statute of limitation and for lack of subject matter jurisdiction;

2.  GRANTED insofar as it seeks dismissal of Claims Three and Seven;

3.  DENIED insofar as it seeks dismissal of Claim Four;

4.  GRANTED to the extent it seeks dismissal of Claim Five's allegations of a Sixth Amendment violation and DENIED insofar as it seeks dismissal of Claim Five's allegations of a First Amendment violation; and

5.  DENIED to the extent it seeks dismissal of Claim Six.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated June 17, 2010.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge