**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 07-cv-02214-LTB-BNB

MOHAMED RASHED D. AL-OWHALI,

      Plaintiff,

v.

ERIC HOLDER, in his official capacity as U.S. Attorney General,
HARLEY LAPPIN, in his official capacity as Director, Federal Bureau of Prisons,
BLAKE DAVIS, in his official capacity as Warden, USP Florence ADMAX,
FEDERAL BUREAU OF INVESTIGATION,

      Defendants.

---

**ORDER**

---

      This case is before me on the Recommendation of the Magistrate Judge (Doc 71) that the Defendants' Fed. R. Civ. P. 12(b)(6) Motion to Dismiss be granted in part and denied in part. Specifically, the Magistrate Judge recommended that:

    1.    The Motion be granted to the extent it seeks dismissal of Claims One and Two as barred by the statute of limitation and for lack of subject matter jurisdiction;

    2.    Be granted insofar as it seeks dismissal of Claims Three and Seven;

    3.    Be denied insofar as it seeks dismissal of Claim Four;

    4.    Be granted to the extent it seeks dismissal of Claim Five's allegations of Sixth Amendment violation and denied insofar as it seeks dismissal of Claim Five's allegation of a First Amendment violation; and

    5.    Be denied to the extent it seeks dismissal of Claim Six.

Plaintiff is incarcerated by the Federal Bureau of Prisons (BOP) at the United States Penitentiary Administrative Maximum in Florence, Colorado (ADX). He was convicted in the United States District Court for the Southern District of New York on charges relating to the 1998 United States Embassy bombing in Nairobi, Kenya. *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93 (2d Cir. 2008). Plaintiff was sentenced to a term of life plus 40 years. He was placed under Special Administrative Measures (SAMs) on October 16, 1998. The SAMs have been renewed annually since then. Pursuant to 28 C.F.R. § 501.3(a):

> Upon direction of the Attorney General, the Director, Bureau of Prisons, may authorize the Warden to implement special administrative measures that are reasonably necessary to protect persons against the risk of death or serious bodily injury. These procedures may be implemented upon written notification to the Director, Bureau of Prisons, by the Attorney General . . . that there is a substantial risk that a prisoner's communications or contacts with persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of death or serious bodily injury to persons.

Plaintiff's SAMs have provided and continue to provide specific reasons for their implementation generally and specifically for particular communication restrictions by Plaintiff. Plaintiff's incarceration at ADX under the SAMs is highly restrictive. In Plaintiff's Second Amended Complaint, the operative complaint subject to the Motion to Dismiss at issue, he sets forth with specificity the restrictions about which he complains.

In Claim One of the Second Amended Complaint Plaintiff alleges that the Defendants' policies, practices, acts, and omissions in connection with the imposition, extension, and enforcement of the SAMs deprives him of his procedural due process and equal protection rights.

Claim Two alleges that the Defendants' policies, practices, acts, and omissions in connection with the imposition, extension, and enforcement of the SAMs violates his substantive due process rights.

In Claim Three, Plaintiff alleges that the Defendants' policies, practices, acts, and omissions in connection with the continuing extension and enforcement of the SAMs have the effect of virtually "burying him alive" in solitary confinement at the ADX in violation of his Eighth Amendment rights.

Claim Four then alleges that the Defendants' policies, practices, acts, and omissions in connection with the imposition, extension, and enforcement of the SAMs deprives him of his equal protection rights and deprives him of his freedom of speech, freedom of expression, freedom of association, and the right to receive information consistent with his status as an inmate and, in addition, deprives him of the equal protection of the law compared to fellow non-SAMs inmates at ADX.

Claim Five alleges that the Defendants' policies, practices, acts, and omissions in connection with the imposition, extension, and enforcement of the SAMs eviscerates his right to consult with and/or retain attorneys or law clinics by prohibiting him from communicating with attorneys who have not signed a SAMs affirmation in violation of his First Amendment rights of association and petition, and the Sixth Amendment right to communicate with counsel pertaining to criminal matters.

Claim Six alleges that the Defendant's policies, practices, acts, and omissions in connection with the imposition, extension, and enforcement of the SAMs deprives him of his equal protection rights and constitutional rights to communicate confidentially with attorneys, federal courts and judges, the United States Attorney's Office, members of the United States Congress, the BOP, federal law enforcement entities, and verified consular officials by classifying his incoming and outgoing mail to these persons as non-legal mail that must be forwarded to the FBI for analysis and

approval before delivery. He claims that he has been deprived of his First Amendment rights of association, petition, and free speech, his Fourth Amendment rights to be free from unreasonable search and seizure, and his Fifth Amendment right to equal protection of the law.

Finally, Claim Seven alleges that the Defendants' policies and practices have imposed indefinite isolation on him and has subjected him to extreme sensory deprivation in violation of his Eighth Amendment right to be free from cruel and unusual punishment.

On March 3, 2010, all of Plaintiff's equal protection claims were dismissed without prejudice (Doc 69). At oral argument, Plaintiff's counsel conceded that Claim Two is duplicative of Claim One. The Defendants are sued in their official capacities. Plaintiff seeks declaratory and injunctive relief.

The Plaintiff has filed specific written objections to each recommendation that a claim or portion of a claim be dismissed. Defendants have filed their response to the objections and Plaintiff has filed his reply to the response.

The Defendants have filed specific written objections to each recommendation that recommends denial of their Motion to Dismiss. Plaintiff has filed a response to those objections and the Defendants have filed their reply to that response.

Plaintiff is represented by able counsel. Oral argument has been held on the objections. I have reviewed the objections *de novo* in light of the file, the record in this case, and oral argument. On *de novo* review, I conclude that the Magistrate Judge's recommendation is correct as to the dismissal of Claims One, Two, Three, Seven, and Claim Five's allegations of a Sixth Amendment violation. With respect, my *de novo* review leads me to conclude that the motion should also be

granted with respect to Claim Four, Claim Five's allegations of a First Amendment violation, and Claim Six.

In evaluating a Rule 12(b)(6) motion to dismiss, the Court must determine whether a Plaintiff has pled sufficient facts to state a plausible claim for relief. *Ashcroft v. Iqubal*, 129 S.Ct. 1937, 1949 (2009). Plaintiff must show more than "a mere possibility that a Defendant has acted unlawfully." *Id*. at 1950. To do so, a Plaintiff must allege "sufficient factual matter[s]" to show that a claim is facially plausible. *Id.* at 1948. This is Plaintiff's burden. *Id*. at 1949-50, but I find and conclude Plaintiff fails to meet that burden here.

In *Ashcroft v. Iqubal, supra,* the inmate alleged that a Government official confined him in harsh conditions "as a matter of policy, solely on account of his religion, race, and/or national origin, and for no legitimate penalogical interest." *Id*. at 1941. But the Supreme Court found that "the more likely or plausible explanation for the defendants' conduct was based on the non-discriminatory intent of directing law enforcement to assist and detain individuals because of their suspected link to" terrorist attacks. *Id*.

The Plaintiff's First Amendment prongs of Claims Four and Five are properly analyzed under the standards of *Turner v. Safley*, 482 U.S. 78, 89-91 (1987) (the *Turner* factors). That is, Plaintiff must show that the SAMs to which he is subjected bear no rational nexus to a governmental interest. The Magistrate Judge erred in his determination because in his view the analysis requires facts that are not properly before the Court on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The Magistrate Judge failed to focus on the facts as plead and whether as plead they stated a plausible claim. Doing so, he improperly shifted the burden to the Defendants.

The SAMs applicable to the Plaintiff are before the Court. Plaintiff has no objection to their consideration in resolving Defendants' Rule 12(b)(6) Motion to Dismiss. Indeed, at oral argument, Plaintiff's counsel conceded that the SAMs satisfy the first *Turner* factor that there be a valid rational connection between the prison regulation and the legitimate governmental interest put forward to justify it. It is incumbent upon the Plaintiff then to plead sufficient facts showing plausibly that there are alternative means of exercising Plaintiff's rights in question, the lack of impact accommodation of the asserted rights will have on guards and other inmates and on allocation of prison resources generally, and finally, the absence of ready alternatives. *See Turner*, *supra*, 482 U.S. at 89-90. My review of the facts as plead in the Second Amended Complaint leads me to conclude that, as in *Ashcroft v. Iqubal, supra*, it is as equally plausible as not that each of the four *Turner* factors favors the imposition of the SAMs to Plaintiff.

In addition, in Claim Five, Plaintiff objects to the procedural requirement that an attorney sign a SAMs affirmation at the initial stage of communications between a SAMs inmate and an attorney. This claim is properly analyzed as an interference with access to courts claim. Plaintiff essentially styled it as such. Second Amended Complaint, ¶ 38, incorporated into claim 5 at ¶ 77. But Plaintiff has failed to plead, plausibly or otherwise, actual injury, *Lewis v. Casey*, 518 U.S. 343, 351 (1996), loss of a separately existing right, *Christopher v. Harbury*, 536 U.S. 403, 416 (2002), censorship, and facts showing that the attorney affirmation provision as to the SAMs does not rationally further a legitimate governmental interest. *See e.g. United States v. Stewart*, 590 F.3d 93 (2d Cir. 2009), *cert. denied*, 130 S.Ct. 1924 (2010). This same analysis also pertains to the "First Amendment" aspect of Plaintiff's Sixth Claim.

Finally, I conclude that Plaintiff has failed to plausibly plead a Fourth Amendment violation in his Sixth Claim. The Magistrate Judge stated that "the Defendants do not discuss whether any of the mail at issue in this case is legally privileged, nor do they discuss reasonableness in the context of the Fourth Amendment." But once again, the Magistrate Judge improperly shifted the burden in this motion to the Defendants to show that the mail is not subject to a reasonable expectation of privacy. Again, Plaintiff has not alleged facts showing that his mail to persons other than his attorneys is legally privileged and he alleges no other facts showing that such communications by an inmate would be subject to a reasonable expectation of privacy.

At oral argument, the Court engaged in dialogue with counsel alluding to the Kafka-esk nature of this case. Kafka, Franz, <u>The Trial</u>. It was a poor and inept analogy as Joseph K, Kafka's fictional character, never even knew the nature of his charges against him. Indeed, he never had a trial at all. In contrast, of course, Mr. Al-Owhali received the full panoply of constitutional and procedural rights to which he was entitled before he was duly convicted and sentenced for his key role in the August 7, 1998 bombing of the American Embassy in Nairobi, Kenya, which resulted in the deaths of 133 people and the injury of scores of others, a destructive assault on the United States. His conviction was affirmed on appeal. *In re Terrorist Bombings of U.S. Embassies in East Africa*, *supra*; *see also, In re Terrorist Bombings of U.S. Embassies in East Africa (Fifth Amendment Challenges)*, 552 F.3d 177 (2d Cir. 2008). Such is the nature of a terrorist and the Government's rational interest in setting the conditions of confinement.

IT IS THEREFORE ORDERED that the Defendants' Motion to Dismiss the Second Amended Complaint (Doc 51) is GRANTED and the above action is DISMISSED.  The parties to bear their respective costs.

BY THE COURT:

   s/Lewis T. Babcock
LEWIS T. BABCOCK, Judge

DATED: January 27, 2011